# EXHIBIT 1

Filed          19-CI-00011    04/09/2019          Kevin Hoskins, Carlisle Circuit Clerk

COMMONWEALTH OF KENTUCKY
CARLISLE CIRCUIT COURT
CIVIL ACTION NO.: 19-CI-00011
**ELECTRONICALLY FILED**

DUSTIN HAMILTON                                                      PLAINTIFF

v.

SNAP-ON INCORPORATED                               DEFENDANT
    **Serve via**
    **Kentucky Secretary of State:**
    The Corporation Trust Company
    Corporation Trust Center
    1209 Orange Street
    Wilmington, DE 19801

    and

    **Serve via**
    **Kentucky Secretary of State:**
    CT Corporation System
    301 S. Bedford Street, Suite 1
    Madison, WI 53703

## COMPLAINT

Plaintiff, Dustin Hamilton, by counsel, for his Complaint against the Defendant, Snap-On Incorporated, states as follows:

### THE PARTIES

1. At all relevant times, the Plaintiff, Dustin Hamilton ("Mr. Hamilton"), is and was a resident of Cunningham, Carlisle County, Kentucky.

2. Upon information and belief, the Defendant, Snap-On Incorporated ("Snap-On"), is a Delaware corporation, with its principal place of business located at 2801 80th Street, Kenosha, Wisconsin, 53143.

Filed          19-CI-00011     04/09/2019           Kevin Hoskins, Carlisle Circuit Clerk

3.  At all times pertinent to this action, Snap-On was regularly doing business within the Commonwealth of Kentucky and has sold products within the Commonwealth of Kentucky that it imported, manufactured, and/or designed.

4.  Upon information and belief, Snap-On may be served with process via the Kentucky Secretary of State on its registered agents: (1) The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801; and (2) CT Corporation System, 301 S. Bedford Street, Suite 1, Madison, Wisconsin, 53703.

5.  At all relevant times, Snap-On was engaged in the business of designing, engineering, manufacturing, assembling, inspecting, testing, advertising, marketing, distributing, and/or selling a variety of home improvement products and tools, including the Snap-On 11/16" 12-Point SAE Flank Drive Standard Combination Wrench, Item Number OEX22B ("the subject Snap-On Wrench"), which is distributed and sold through Snap-On's website throughout the United States and the Commonwealth of Kentucky.

## JURISDICTION AND VENUE

6.  The amount in controversy exceeds the minimum amount necessary to establish the jurisdiction of this Court and that of the United States District Court.

7.  Snap-On submitted to the jurisdiction of this Court by doing business directly or through its agents, including the following acts:

    a.  Committing a tortious act within this Commonwealth by selling and delivering defective products to persons, firms, or corporations in this Commonwealth via its distributers, dealers, wholesalers, and brokers. These defective products were used by consumers in Kentucky in the ordinary course of commerce and trade;

    b.  Conducting and engaging in substantial business and other activities in Kentucky by selling products to persons, firms, or corporations in this Commonwealth via its distributors, wholesalers, dealers, and brokers.

Filed          19-CI-00011     04/09/2019       2     Kevin Hoskins, Carlisle Circuit Clerk

                Such products were used by consumers in Kentucky in the ordinary course of commerce and trade; and,

    c. Selling products with knowledge or reason to foresee that these products would be shipped in interstate commerce and would reach the market of Kentucky and/or Kentucky users or consumers.

8. Venue is proper in Carlisle County, because Mr. Hamilton resides in Carlisle County, and a substantial part of the events or omissions of the incident giving rise to this Complaint took place in Cunningham, Carlisle County, Kentucky.

## FACTS

9. The subject Snap-On Wrench forms the basis of this Complaint.

10. The subject Snap-On Wrench is designed and manufactured to provide consumers, like Mr. Hamilton, with grip and mechanical advantage in applying torque to turn objects or prevent objects from turning.

11. On or about April 20, 2018, Mr. Hamilton was using the subject Snap-On Wrench in a reasonably foreseeable manner at his home to work on his jet-ski with his wife.

12. Snap-On's website informs users that the subject Snap-On Wrench's "continuous arc design distributes stress over the entire wrench opening radius for greater strength," and "forged steel and heat treat hardness provides a superior wrench with proper strength and durability while reducing wear and breakage."[1]

13. Relying on the assurances from Snap-On, Mr. Hamilton used the subject Snap-On wrench in a reasonably foreseeable manner to work on a jet-ski at his home.

14. Mr. Hamilton was holding the wrench in place on the nut of the prop part of the jet ski while his wife was working with another wrench on the opposite side of the jet ski.

---

[1] https://store.snapon.com/Standard-Handle-inches-11-16-12-Point-SAE-Flank-Drive-Standard-Combination-Wrench-P633102.aspx

Filed          19-CI-00011   04/09/2019          Kevin Hoskins, Carlisle Circuit Clerk

15. Suddenly and without warning, the subject Snap-On Wrench broke, and the broken piece impaled Mr. Hamilton's right forearm.

16. As a result of Snap-On's strict liability, negligence, and other liability producing conduct, as more fully described below, Mr. Hamilton has sustained and will continue to suffer significant damages, including serious and permanent bodily injuries, pain and suffering, permanent impairment, mental anguish, and medical expenses.

## COUNT I – STRICT LIABILITY (DESIGN DEFECT)

17. The Plaintiff adopts and reiterates each and every allegation above, as if set out fully in this paragraph.

18. Snap-On is in the business of designing, assembling, testing, manufacturing, inspecting, distributing, importing, selling, and/or supplying a wide array of home improvement products and tools, including the subject Snap-On Wrench.

19. Snap-On designed, assembled, distributed, imported, marketed, sold, and/or ultimately placed the subject Snap-On Wrench directly into Kentucky's stream of commerce.

20. Snap-On knew or reasonably foresaw that individuals like Mr. Hamilton would use the subject Snap-On Wrench.

21. The subject Snap-On Wrench is defective in its design because it was not properly forged and treated to provide enough strength that would either prevent or protect against the wrench from breaking and injuring its users, like Mr. Hamilton.

22. The subject Snap-On Wrench is defective in its design because the breaking of the wrench should be avoided, mitigated against, or otherwise prevented by a feasible, alternative design.

23. The subject Snap-On Wrench's design defects, whether individually or collectively, rendered the subject Snap-On Wrench unreasonably dangerous for its intended and foreseeable use.

24. The subject Snap-On Wrench left Snap-On's possession and control with the design defect(s) that Mr. Hamilton alleges, and the subject Snap-On Wrench remained defective and unreasonably dangerous up until and throughout the events giving rise to Mr. Hamilton's injuries and damages.

25. The subject Snap-On Wrench's design defects, whether individually or collectively, actually and proximately caused Mr. Hamilton's injuries and damages.

### COUNT II – STRICT LIABILITY (WARNING DEFECT)

26. The Plaintiff adopts and reiterates each and every allegation above, as if set out fully in this paragraph.

27. Snap-On designed, assembled, distributed, imported, marketed, sold, and/or ultimately placed the subject Snap-On Wrench directly into Kentucky's stream of commerce.

28. Snap-On knew or reasonably foresaw that individuals like Mr. Hamilton would use the Subject Snap-On Wrench.

29. The subject Snap-On Wrench is defective in its warnings because Snap-On failed to adequately advise users, like Mr. Hamilton, of the dangers presented by the use of the subject Snap-On Wrench in the reasonable, foreseeable manner that would have otherwise prevented against Mr. Hamilton's injuries and damages.

30. The subject Snap-On Wrench's warning defects, whether individually or collectively, rendered the subject Snap-On Wrench unreasonably dangerous for its intended and foreseeable use.

Filed          19-CI-00011    04/09/2019           Kevin Hoskins, Carlisle Circuit Clerk

31. The subject Snap-On Wrench left Snap-On's possession and control with the warning defects Mr. Hamilton alleges, and the subject Snap-On Wrench remained defective and unreasonably dangerous up until and throughout the events giving rise to the Mr. Hamilton's injuries and damages.

32. The subject Snap-On Wrench's warning defects, whether individually or collectively, actually and proximately caused the Mr. Hamilton's injuries and damages.

### COUNT III – NEGLIGENCE

33. The Plaintiff adopts and reiterates each and every allegation above, as if set out fully in this paragraph.

34. Snap-On designed, assembled, distributed, imported, marketed, sold, and/or ultimately placed the subject Snap-On Wrench directly into Kentucky's stream of commerce.

35. Snap-On knew or reasonably foresaw that individuals like Mr. Hamilton would use the subject Snap-On Wrench.

36. Snap-On owed a duty of reasonable care to people who use the subject Snap-On Wrench, including Mr. Hamilton, to design and warn about the subject Snap-On Wrench in such a way that did not render the subject Snap-On Wrench defective and unreasonably dangerous.

37. Snap-On owed a duty of reasonable care to people who use the subject Snap-On Wrench, including Mr. Hamilton, to design and warn about the subject Snap-On Wrench's risk of breaking while in use.

38. Snap-On owed a duty of reasonable care to people who use the subject Snap-On Wrench, including Mr. Hamilton, to not make inaccurate and/or misleading statements and/or to manufacture the subject Snap-On Wrench in such a way that the subject Snap-On Wrench would perform as designed, including by manufacturing the Subject Snap-On Wrench in such as

so that the subject Snap-On wrench would not break while in use to prevent injuries such as those sustained by Mr. Hamilton.

39. Snap-On breached the duties it owed to Mr. Hamilton by inadequately designing and/or warning about the subject Snap-On Wrench to include prevention of breaking while in use and/or by publishing an erroneous and/or misleading assurance that the subject Snap-On Wrench was durable and strong.

40. Snap-On knew or reasonably foresaw that people who use the subject Snap-On Wrench, including Mr. Hamilton, would suffer injuries and damages due to the subject Snap-On Wrench's defective and unreasonably dangerous condition.

41. At no time did Snap-On take action to remedy the subject Snap-On Wrench's defective and unreasonably dangerous condition or to adequately warn consumers or users about its negligent design of the subject Snap-On Wrench, despite Snap-On's knowledge of the subject Snap-On Wrench's defective condition and ability to warn.

42. Snap-On's breaches of the duties it owed to Mr. Hamilton actually and proximately caused Mr. Hamilton's injuries and damages.

### COUNT IV – BREACH OF IMPLIED WARRANTIES OF MERCHANTABILITY

43. The Plaintiff adopts and reiterates each and every allegation above, as if set out fully in this paragraph.

44. Snap-On sold the subject Snap-On Wrench to Mr. Hamilton.

45. Snap-On's implicitly warranted that the subject Snap-On Wrench sold to Mr. Hamilton was merchantable in that it was fit for the ordinary purposes for which such goods are used.

Package:000009 of 000012
Presiding Judge: HON. TIMOTHY A. LANGFORD (601249)
Package : 000009 of 000012

46. The subject Snap-On Wrench sold by Snap-On to Mr. Hamilton was not fit for its ordinary purpose, providing a safe alternative or design, as the subject Snap-On Wrench broke while being used and impaled Mr. Hamilton's right forearm under ordinary use conditions.

47. Snap-On breached its implied warranty of merchantability to Mr. Hamilton by selling him the subject Snap-On Wrench that broke and impaled his right forearm.

48. Snap-On's breach of implied warranty of merchantability actually and proximately caused Mr. Hamilton's injuries and damages.

### COUNT V – BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

49. The Plaintiff adopts and reiterates each and every allegation above, as if set out fully in this paragraph.

50. Snap-On sold the subject Snap-On Wrench to Mr. Hamilton.

51. At the time of selling the subject Snap-On Wrench to Mr. Hamilton, Snap-On knew or had reason to know that Mr. Hamilton purchased the subject Snap-On Wrench for the particular purpose of acquiring an easy to use, and most importantly, safe, reliable wrench.

52. Mr. Hamilton relied upon Snap-On to use its skill and/or judgment to furnish a wrench that was suitable for his needs.

53. Snap-On impliedly warranted that the subject Snap-On Wrench it sold to Mr. Hamilton was suitable for his needs.

54. The subject Snap-On Wrench sold by Snap-On to Mr. Hamilton was not fit for the particular purpose for which Mr. Hamilton purchased it; that is, to be a safe, reliable, and easy to use wrench, as it broke and impaled Mr. Hamilton's right forearm under ordinary use conditions.

55. Snap-On breached its implied warranty of fitness for a particular purpose to Mr. Hamilton by selling him the subject Snap-On Wrench that turned out to be unsafe.

56.     Snap-On's breach of its implied warranty of merchantability actually and proximately caused Mr. Hamilton's injuries and damages.

**WHEREFORE**, the Plaintiff, Dustin Hamilton, prays for the following relief against the Defendant, Snap-On Incorporated, for the following:

A. That the Clerk of this Court issue summonses for Defendant, Snap-On Incorporated, to be served through the Kentucky Secretary of State, by and through the Defendant's registered agents for service of process at:

   a. The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801; and,

   b. CT Corporation System, 301 S. Bedford Street, Suite 1, Madison, Wisconsin, 53703.

B. A trial by jury on all issues of fact herein;

C. Judgment against Defendant, Snap-On Incorporated, in favor of the Plaintiff in excess of the jurisdictional limits of this Court, said amount to be that which is determined as being fair and reasonable by all evidence, for the following elements of damages:

   a. Pain, suffering, and mental anguish;

   b. Past and future mental and physical pain, suffering, and inconvenience, including emotional distress;

   c. Past and future medical expenses to the extent that these elements of damages are not paid or payable to the Plaintiff by their own insurance carrier pursuant to KRS Chapter 304;

   d. Trial by jury;

   e. Plaintiff's costs herein expended; and,

  f. Any and all other relief to which the Plaintiff may be entitled.

 D. Such other further relief as the Court deems appropriate.

Respectfully submitted this 9th day of April, 2019:

/s/ Shea W. Conley
SHEA W. CONLEY
Morgan & Morgan Kentucky, PLLC
333 West Vine Street, Suite 1200
Lexington, KY 40507
(859) 286-8364 – Telephone
(859) 899-8108 – Facsimile
sconley@forthepeople.com
*Counsel for Plaintiff*

## CERTIFICATION

This is to certify that pursuant to KRS 411.188(2), the undersigned attorney has notified by certified mail all of those parties believed to possibly hold subrogation rights to any award received by the Plaintiff as a result of this action, and that failure to assert subrogation rights by intervention, pursuant to Kentucky Civil Rule 24 or otherwise, will result in a loss of those rights with respect to any final award received by the Plaintiff as a result of this action.

The parties are notified as follows:

Anthem Health Plans of KY, Inc.
ATTN: Subrogation Department
P.O. Box 659940
San Antonio, TX 78265-9939

/s/ Shea W. Conley
SHEA W. CONLEY
*Counsel for Plaintiff*

Package:000012 of 000012
Presiding Judge: HON. TIMOTHY A. LANGFORD (601249)
Package : 000012 of 000012